# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SANDRA VINES,** | **Civil Action No. 13-3923(FLW)** |
| **Plaintiff,** | |
| | |
| **v.** | **OPINION** |
| **COLUMBUS HOUSE et al.,** | |
| **Defendants.** | |

## I.    <u>INTRODUCTION</u>

This matter has been opened to the Court by Plaintiff's filing of an Amended Complaint in this action. The Court previously granted Plaintiff's *in forma pauperis* ("IFP") application and dismissed the original Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. (*See* ECF No. 3.) The Court has screened the Amended Complaint and will dismiss Plaintiff's claims for relief as to all Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B).

## II.    <u>FACTUAL BACKGROUND</u>

Sandra Vines brings this civil rights action against Bo Robinson and Columbus House, a halfway house which operates under the authority of the New Jersey Department of Corrections ("NJDOC"), and employees at Columbus House, *i.e.*, Mr. Salaga, Ms. Newborn, Mr. Maestrella, Ms. Sheffield, Ms. McCrae, Mr. Klein, and Mr. Davis.[1] (*See* ECF No. 9, Am. Compl).

---

[1] Plaintiff notes that the Amended Complaint adds two new Defendants – Bo Robinson and Mr. Davis.

Plaintiff's Amended Complaint is divided into discrete sections that outline her allegations against the entity and individual Defendants.

### a. Bo Robinson and Columbus House

According to Plaintiff's Amended Complaint, Bo Robinson has a contract with Columbus House, which is the New Jersey Department of Corrections ("NJDOC") halfway house where Plaintiff resided the time of the incidents alleged in the Amended Complaint. Plaintiff alleges that Columbus House is operated on the premises of Bo Robinson. (ECF No. 9, Am. Compl. at 2.) Defendant Salaga is the director of Bo Robinson, and Defendant Newborn is the Director of Columbus House.[2] Plaintiff alleges that there is a policy in place at Columbus House that provides her with "legal access" and permits her to receive legal mail. Although the mail may be inspected, it must be opened in her presence in her presence and staff may not read her legal mail. She further alleges that on two occasions, she received legal mail that had already been opened outside her presence. (*Id.*) She filed grievances regarding these two instances; however, "nothing was ever done." (*Id.*) She also alleges that she was unable to answer court notices and unable to complete her change of sentence motion and file her parole appeal to the appellate court. (*Id.* at 2.) She further alleges that there is no law library, law books, paralegals, legal assistants, or legal supplies available to her at Columbus House. (*Id.* at 3.) Plaintiff filed grievances regarding these issues to Defendant Salaga, but he allegedly failed to assist her.[3] (*Id.*)

---

[2] Plaintiff provides further allegations regarding the conduct of these Defendants, which is described below.

[3] Plaintiff also alleges that Defendant McCrae, who works in the Classification Department at Bo Robinson, harassed Plaintiff by telling her that McCrae "didn't need to do anything for [Plaintiff]." *Id.*

**b. Defendant Salaga – Director of Bo Robinson**

Plaintiff alleges that she complained to Defendant Salaga about "health issues, safety, staff misconduct, opening legal mail, not giving [Plaintiff] her mail, sexual harassment, threats by both staff and inmates, discrimination, falsification of documents, and conflict of interest." (*Id.* at 3.) Plaintiff further alleges that Salaga failed to answer many of her grievances and that there is no effective grievance policy in place at Columbus House. Plaintiff states that her "right to an effective remedy and grievance process was violated." (*Id.*)

**c. Defendant Newborn – Director of Columbus House**

Plaintiff alleges that she told Defendant Newborn that she was a victim of discrimination and racist remarks, but that Newborn "down played [Plaintiff's] complaints and ignored [her] complaint (failing to investigate or address that allegation)." (*Id.* at 4.) Newborn also allegedly "upheld the decision to delay [Plaintiff's] transfer to a more suitable halfway house facility." Plaintiff further alleges that "that delay was a direct result of grievances that [Plaintiff] submitted," which are described above. (*Id.*) Plaintiff further alleges she complained to Ms. Newborn that her mail was being unreasonably held at Columbus House, sometimes for 10 days or more. (*Id.*) Plaintiff also states that when she was transferred to another halfway house, her birth certificate did not reach her by mail at the new halfway house for two months, and she lost job opportunities due to the delay. (*Id.*) Although it is not clear who failed to forward Plaintiff's birth certificate, she appears to allege that her birth certificate was held in retaliation for her filing of grievances. (*Id.*)

**d. Defendant Mastrella**

Plaintiff does not provide Defendant Mastrella's job title, but she alleges that this Defendant "falsified [Plaintiff's] psychology reports because there were numerous illegal

activity, safety issues, health issues, and other circumstances that threatened [Plaintiff] and interfered with [her] treatment." (*Id.*) Plaintiff alleges that her case manager and counselor, who are not identified in the Complaint, became angry with her for filing numerous complaints about the conditions at Columbus House, and that Defendant Mastrella "conspired with the counselor, case manager, and director to deny [Plaintiff's] transfer to a better facility." When Plaintiff complained about Defendant Mastrella, he allegedly further delayed her transfer and threatened to continue to delay the transfer if she continued to complain.

### e. Defendant Sheffield

Defendant Sheffield's job title or responsibilities are not clear from the Amended Complaint. According to the Complaint, Defendant Sheffield "violated [Plaintiff's] right to speak and address issues [Plaintiff] had regarding medical issues and medical and drug urine tests and procedures." (*Id.* at 4.) Defendant Sheffield allegedly "harassed" Plaintiff by "interrupting [Plaintiff's] legal calls and legal appointments." Sheffield also allegedly "hit [Plaintiff] with a door when trying to close it in [Plaintiff's] face" when dispensing Plaintiff's medication. Plaintiff appears to allege that Sheffield discussed Plaintiff's private medical information with others and compromised Plaintiff's safety by "breaching confidential information to other inmates and staff involved with criminal allegations." Sheffield also allegedly told Plaintiff that she would be sent back to prison if she kept asking to see a doctor for her existing and emergent medical conditions. (*Id.* at 4.)

### f. Defendant McCrae

Defendant McCrae is identified as an employee in the Classification Department at Bo Robinson who processes inmate requests for "legal access to the courts and legal phone calls." (*Id.* at 5.) Plaintiff alleges the following with respect to this Defendant:

She denied me legal access and deliberately delayed my access
when I made it clear to her about deadlines, calls, copies, law
books that I needed to adequately address my legal needs and pro
se litigation. I was unable to submit parole appeal due to inability
to research needed legal information. I was unable to proceed with
my change of custody motion and access legal transcripts that I
need in [two] separate court issues. She interfered and violated my
right to lawyer/client confidentiality when she held the phone
while I spoke with my attorney on a couple occasions and asked
questions about what I had discussed or need to discuss with my
lawyer. She denied me Notary access when I requested it for my
legal paperwork for the court. She denied me indigence when I
didn't have funds for legal copies or postage for legal mail. When I
reported all of these violations to Mr. Salaga, she harassed me by
making it difficult for me to come into the office to do my legal
work and use the phone for legal calls. She also held the disc that
had my legal pending motions on it and refused to print them out.
Then when I submitted another grievance, she came up to my unit
and told me to sign a blank grievance that would say that she have
addressed my legal access issues or she wouldn't let me do my
legal work. Then she took that form (which was only stating that I
was in the office on that one occasion), and she cut and pasted the
response to the original form that I had initially made the
complaint on. That is illegal and falsification of an administrative
and legal document. I reported that to Mr. Salaga and he didn't do
anything about it, nor did he even respond to my written grievance.
I know factually that he received it, because a staff member
personally put my grievance directly in his hand.

(*Id.* at 5.)

g. **Defendant Klein**

According to the Amended Complaint, Defendant Klein is "the director, the person in

charge of medical issues" at Columbus House." (*Id.* at 5.) Plaintiff alleges that Defendant Klein

"violated Plaintiff's Hippa [sic] Rights", when he allowed non-medical staff to be involved with

Plaintiff's medical information and medication. (*Id.*) Plaintiff also alleges that her medicine was

dispensed to her in front of other inmates, and, as a result, other inmates knew the types of

medications Plaintiff was taking. (*Id.*) When Plaintiff complained about these practices,

Defendant Klein allegedly threatened her by stating that she would be returned to prison if she didn't stop complaining and asking for medical attention. (*Id.*)

Plaintiff alleges that she has asthma, back problems, high blood pressure, and allergies to mold, dust, spray chemicals, and smoke. (*Id.* at 5.) Plaintiff states that Columbus House accepted her with these medical conditions and, therefore, must provide her with adequate care for her conditions. Plaintiff alleges that although the facility is designated as non-smoking, people in the building smoke. Plaintiff was allegedly exposed to second-hand smoke and had asthma attacks on more than one occasion. Plaintiff alleges that she "still suffer[s] from respiratory conditions that were worsened because of all of the illegal smoking in the facility by smokers, both inmates and staff." (*Id.* at 5.)

### h. Defendant Davis

Plaintiff also alleges that Defendants Davis "violated [Plaintiff's] Hippa Rights" by dispensing her medications and discussing my medical record information in front of other non-medical persons and other inmates on numerous occasions. (*Id.* at 6.) Plaintiff describes Davis as "a supervisor in charge of medication and medical requests" and states that he is responsible for allowing non-medical staff to dispense and discuss Plaintiff's medication, medical requests and medical information in the presence of other inmates and other non-medical staff. (*Id.*) In January 2014, Davis allegedly told another inmate that Plaintiff had a positive drug test. (*Id.*) Defendant Davis also allegedly told Plaintiff that she would be returned to prison if she didn't stop complaining and asking for medical attention and privacy. (*Id.*) Plaintiff further alleges that Davis "threatened not to get [Plaintiff] medical help" on several occasions. On one occasion, Davis was upset because Plaintiff told the previous shift supervisor that she had a swollen eye. When Plaintiff tried to tell Davis, Davis told her to "shut the fuck up" and get out

of the office.  On another occasion, Plaintiff told him she had previously had an asthma attack, which was noted in the log book, but Davis refused to send her to a doctor.  (*Id.*)

Plaintiff's Amended Complaint also includes a handwritten note alleging that Bo Robinson "has previously been investigated for some of the allegations that [Plaintiff] made, by the New York Times and other legal agencies."  (*Id.* at 6.)  Plaintiff further alleges that "there has been numerous instances of health hazards, drug activity, staff members prosecuted, and [b]reaches of safety and security."  (*Id.*)

## III.   STANDARD OF REVIEW

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, see 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Amended Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B).  When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first

separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Complaint must also allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, *pro se* litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Furthermore, "[l]iberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.' *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

# IV.  ANALYSIS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  The Court construes Plaintiff's Amended Complaint to raise a number of claims for relief under 42 U.S.C. § 1983 against the individual and entity defendants.  More specifically, the Court construes Plaintiff to raise the following claims for relief under § 1983: First and Fourteenth Amendment claims related to the opening of her legal mail, denial of access to the courts, and inadequacy of the grievance system; First Amendment retaliation claims; Eighth Amendment claims for inadequate medical care and exposure to environmental tobacco smoke; and Fourteenth Amendment claims for denial of medical privacy.[4]  The Court next considers whether Plaintiff has sufficiently stated any claims for relief under § 1983.

---

[4] The Court does not construe Plaintiff to raise any state law claims for relief.  To the extent Plaintiff seeks relief under state law, she must raise those claims in an Amended Complaint.

### a. Legal Mail Claims

Plaintiff alleges that her legal mail was opened outside her presence and that she was denied access to the court. The Third Circuit has "recognized a cause of action to address "[a] state pattern and practice ... of opening legal mail outside the presence of the addressee inmate," because such a practice "interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011) (citing *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir.2006) (reaffirming the holding of *Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir.1995)). The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen also states a First Amendment claim. *McLeod v. Monmouth Cty. Corr. Inst.*, No. CIV.A. 05-4710 (AET), 2006 WL 572346, at *3 (D.N.J. Mar. 8, 2006) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996); *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304 (7th Cir. 1993)); *Thompson v. Hayman*, No. 09-1833, 2011 WL 2652185, at *5 (D.N.J. July 6, 2011) (opening outside of the prisoner's presence, reading, delaying, or stealing a prisoner's legal mail violates a prisoner's First Amendment rights). However, "[a] single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation." *Fuentes v. State of New Jersey Office of Pub. Defs.*, No. CIV.A. 05-3446FLW, 2006 WL 83108, at *5 (D.N.J. Jan. 11, 2006) (citing *Morgan v. Montayne*, 516 F.2d 1367 (2d Cir.1975), *cert. denied*, 424 U.S. 973 (1976)).

Here, it appears that Plaintiff attempts to state a legal mail claim against Bo Robinson and/or Columbus House. As the Court explained in its prior screening Opinion, entities like Bo Robinson and Columbus House cannot be found liable simply because they employ wrongdoers. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691-92 (1978); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003). For an entity to be

found liable under § 1983, Plaintiff must assert in the Complaint facts showing that the entity had a relevant policy or custom, and that this policy or custom caused a violation of Plaintiff's constitutional rights. *See Natale*, 318 F.3d at 583-84; *accord Jiminez v. All American Rathskeller, Inc.*, 503 F. 3d 247, 249 (3d Cir. 2007) (stating that a plaintiff must show a "direct causal link between a . . . policy or custom and the alleged constitutional deprivation.") (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Plaintiff alleges that Bo Robinson and/or Columbus House has a policy that requires legal mail to be opened in an inmate's presence and that Plaintiff's mail was opened outside her presence on two occasions. (ECF No. 9, Am. Compl. at 1.) Plaintiff, however, does not provide any facts showing a direct causal link between the policy and the alleged constitutional deprivation. At best, it appears that the legal mail policy was violated by one or more of the employees of Columbus House and/or Bo Robinson, and Plaintiff seeks to hold the entities responsible under an impermissible theory of *respondeat superior*. As such, her legal mail claims under § 1983 against Bo Robinson and Columbus House are dismissed for failure to state a claim.

To state a legal mail claim against an individual defendant, Plaintiff must allege facts showing that the individual participated in the alleged wrongdoing amounting to a violation of her constitutional rights. *See, e.g., Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs"). Although it is not necessarily fatal to her claim, Plaintiff has not identified the individuals who opened her legal mail or failed to stop

their subordinates from opening her legal mail. More importantly, the Amended Complaint fails to allege sufficient facts to show a pattern or practice of her legal mail being opened outside her presence; rather, the Amended Complaint alleges that her legal mail was opened outside her presence on only two occasions. (ECF No. 9, Am. Compl. at 2.) Thus, even if Plaintiff had identified the individuals who opened her legal mail on those two occasions, these allegations, standing alone, fail to state a claim for relief under § 1983. As such, the Court will dismiss her legal mail claims for failure to state a claim for relief.

**b. Denial of Access to the Courts**

Plaintiff's Amended Complaint also attempts to state claim against entity Defendants Bo Robinson, and Columbus House, and individual Defendant McCrae for denial of the right of access to courts. The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. *See Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). *See also Peterkin v. Jeffes*, 855 F.2d 1021, 1036 n. 18 (3d Cir.1988) (chronicling various constitutional sources of the right of access to the courts).

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give convicted inmates access to law libraries or direct legal assistance). In *Bounds v. Smith*, 430 U.S. at 828, the Supreme Court held that "the fundamental constitutional right of access to the courts requires

prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that *Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (emphasis in original).

In addition to the above limitations, "a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent 'actual injury' by hindering his efforts to pursue such a claim." *Banks v. Fraiser*, No. CIV A 06-4152 FLW, 2007 WL 38909, at *4 (D.N.J. Jan. 4, 2007) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe*, 536 F.3d at 205-06 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Thus, as explained by the Third Circuit, prisoners bringing access to the court claims "must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." *Id.* (citing *Christopher* 536 U.S. at 416–17); *see also Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (A plaintiff does not establish a constitutional violation when he establishes only that he had a "mere hope" that he would prevail on the underlying claim.). Furthermore, conclusory allegations that an

inmate suffered prejudice will not support an access-to-courts claim.[5]  *Duran v. Merline*, 923 F. Supp. 2d 702, 722-23 (D.N.J. 2013) (citing *Arce v. Walker*, 58 F.Supp.2d 39, 44 (W.D.N.Y.1999) (internal citations omitted)).  As such, an access to the Courts claim will be subject to dismissal where "the Court [is] left to guess whether the suit had any merit."  *Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014).

Here, Plaintiff's alleges that Bo Robinson and/or Columbus House has no library, law books, paralegals, legal assistants, or legal supplies. (ECF No. 9, Am. Compl. at 2-3.)  She also appears to allege that Defendant McCrae and other unidentified individuals interfered with her access to the courts by denying her access to legal materials and interfering with her legal calls. (*Id.* at 2, 5.)  As a result, Plaintiff alleges that she was unable to complete her change of sentence motion and file her parole appeal to the Appellate Division.  (*Id.* at 2, 5.)  The Court finds these

---

[5] The actual injury requirement applies even where the prisoner can establish that the law library or access to legal assistance is subpar.  As explained by the Supreme Court in *Lewis v. Casey*,

> *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."

*Lewis*, 518 U.S. at 351; *see also Tinsley v. Del Rosso*, No. CIV.A. 08-1251(RMB), 2008 WL 2236598, at *3-4 (D.N.J. May 30, 2008) (explaining same).  Similarly, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." *Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997); *see also Tinsley*, 2008 WL 2236598, at *4 (explaining same).

allegations troubling; however, to state an access to the courts claim, Plaintiff must provide facts to suggest that her change of sentence motion and/or parole appeal had merit and that she has no other remedy for the lost claim(s) other than her access to the courts claim. Plaintiff's Amended Complaint provides no such facts. As such, Plaintiff does not satisfy the "actual injury" pleading requirement for an access to the courts claim. The Court will therefore dismiss her access to the courts claims at this time.

### c. Failure to have an Adequate Grievance System

Plaintiff also appears to allege that Bo Robinson and Columbus House violated her constitutional rights by failing to have an adequate grievance system, and that individual Defendants Salaga and Newborn violated her constitutional rights by ignoring her grievances and complaints and/or failing to investigate her allegations. It is well-established, however, that prisoners do not have a constitutional right to an effective grievance process. "[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process [citation omitted], a prisoner cannot maintain a constitutional claim . . . based upon [the prisoner's] perception that [the recipient of the grievances] ignored and/or failed to properly investigate his grievances." *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011). Plaintiff's allegations that Defendants Salaga and Newborn failed to address her grievances, without more, fails to state a claim for relief under § 1983. Likewise, because Plaintiff has no constitutional right to an adequate grievance system, the failure of Bo Robinson and/or Columbus House have an adequate grievance system is likewise not actionable under § 1983. As such, these claims are dismissed as to all Defendants.

### d. First Amendment Retaliation Claims

The Court also construes Plaintiff to allege a number of claims for First Amendment retaliation under § 1983 in connection with her complaints and the filing of grievances. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under Section 1983." *Pantusco v. Sorrell*, No. CIV. 09-3518 DRD, 2011 WL 2148392, at *8 (D.N.J. May 31, 2011) (citing *White v. Napoleon*, 897 F.2d 103, 111–12, (3d Cir. 1990)). As such, "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quotations and citations omitted).

To state a § 1983 claim for First Amendment retaliation, plaintiff must show: "(1) [s]he engaged in protected speech, (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the adverse action was prompted by plaintiff's protected speech." *Wilson v. Zielke*, No. 09–2607, 2010 WL 2144292, *1 (3d Cir. May 28, 2010) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003)). With respect to the first element, a prisoner's submission of grievances is constitutionally protected conduct. *See Mitchell*, 318 F.3d at 530.[6] The "adverse action" requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Finally, a prisoner must show that the constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333–34 (quoting

---

[6] Similarly, the filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997); *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981).

*Mount Health Bd. of Educ. v. Doyle*, 429 U.S. 274, 287\ (1977)).  In this regard, the mere fact that an adverse action occurs after a grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 Fed. App'x. 491, 498 (3d Cir. 2005).  To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir.1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir.1997)).

Here, Plaintiff alleges that Defendant Newborn upheld the decision to delay her transfer to another facility, allegedly in retaliation for her filing of various grievances, and that Defendant Mastrella conspired to deny her transfer, allegedly in retaliation for Plaintiff's filing of grievances against her counselor and case manager.  (ECF No. 9, Am. Compl. at 4.)  The Court assumes without deciding that a lengthy delay in transfer (or denial altogether) to a better facility could under some circumstances constitute an adverse action sufficient to deter a person of ordinary firmness from exercising her constitutional rights.  Here, however, Plaintiff's Amended Complaint makes clear that she was eventually transferred to another facility, and does not provide any facts about the length of the delay.  As such, the Court cannot determine whether the alleged delay in transfer would prevent a person of ordinary firmness from pursuing her constitutional rights.  *See Brandt v. Feibusch*, No. CIV.A. 10-4223 FLW, 2012 WL 1937563, at *13 (D.N.J. May 29, 2012) (finding in context of civil commitment that an approximately six weeks delay did not constitute adverse action sufficient to deter a person of ordinary firmness from exercising his rights).  Furthermore, aside from bare allegations, Plaintiff's Amended

Complaint fails to provide facts that would connect any alleged delay in her transfer or denial of transfer to her filing of grievances. Although it appears from the Complaint that Plaintiff's transfer was delayed and/or denied <u>after</u> she filed various grievances, "the mere temporal association between his litigation and the alleged delay in his transfer is not sufficient to demonstrate that the litigation was a motivating factor in the Defendants' actions or to raise his claims above a mere 'speculative' level." *Brandt*, 2012 WL 1937563, at *13 (citing *Gans v. Rozum*, No. 06–62J, 2007 WL 257127, at *6 (W.D. Pa. Aug.31, 2007) (mere temporal connection between filing of civil rights complaint and exercise restriction is "too thin a reed" on which to hang a retaliation claim), *aff'd*, 267 F. App'x. 178 (3d Cir.), *cert. denied*, 555 U.S. 844 (2008)). As such, the Court will dismiss the First Amendment retaliation claims premised on her delayed transfer.

Plaintiff also alleges that the two-month delay in forwarding Plaintiff's birth certificate to her new halfway house was an act of retaliation by unidentified individuals who were displeased by Plaintiff's filing of various grievances (ECF No. 9, Am. Compl. at 4.); Plaintiff, however, has not provided sufficient facts to connect the delay in forwarding her birth certificate to her filing of any grievances or identified the person or persons who were allegedly responsible for delaying her birth certificate. The Court will also dismiss the First Amendment retaliation claim based on the two-month delay in the forwarding of her birth certificate.

Plaintiff also alleges a claim for First Amendment retaliation against Defendant McCrae for alleged interference with her "legal access" and legal phone calls.[7] (*Id.* at 5.) According to the Amended Complaint, Defendant McCrae denied and delayed Plaintiff's "legal access,"

---

[7] Plaintiff does not explain the term "legal access" and it is not clear what type of legal access was denied by Defendant McCrae.

denied her requests for notary and copying services and postage, and interfered with Plaintiff's

legal calls. Plaintiff alleges that after she reported this misconduct to Defendant Salaga, McCrae,

"harassed her by making it difficult for [Plaintiff] to . . . do her legal work and use the phone for

legal calls" and "held the disc that had [Plaintiff's pending motions on it and refused to print

them out."[8] (*Id.* at 5.) Thus, Plaintiff alleges that McCrae engaged in the <u>same type of</u>

<u>misconduct</u> prior to and after Plaintiff's filing of grievances, *i.e.*, interfering with her legal access

and legal phone calls. As such, it is not clear how, if at all, McCrae's misconduct was motivated

by Plaintiff's filing of grievances. Although Plaintiff alleges facts to show that McCrae was

upset by Plaintiff's filing of grievances against her, she does not provide sufficient facts to

suggest that Plaintiff's filing of grievances "was a substantial or motivating factor in the

decision" to interfere with Plaintiff's legal work and legal calls. *See Rauser*, 241 F.3d at 333–34

(internal quotation and citation omitted). To the extent Plaintiff alleges that McCrae's refusal to

turn over her disc or print out her legal papers constitutes an "adverse action," the Court finds

that this one incident, without more, would be insufficient to deter a person of ordinary firmness

from exercising her First Amendment rights.

  The remaining First Amendment retaliation claims appear to be premised on Defendants'

<u>threats</u> to take adverse action against her. After allegedly delaying her transfer, Defendant

Mastrella allegedly threatened to continue to delay the transfer if she continued to file

grievances. (ECF No. 9, Am. Compl. at 4.) Defendants Davis, Klein, and Sheffield also

allegedly told Plaintiff that she would be returned to prison if she didn't stop complaining about

---

[8] Earlier in the Amended Complaint, Plaintiff also alleges that unidentified individuals denied her legal calls and failed to inform her of legal calls in retaliation for her various grievances. (*Id.* at 1.)

her medical treatment and violations of her privacy. (*Id.* at 5-6.) Finally, Defendant Davis

allegedly threatened to deny Plaintiff medical assistance "on a couple of occasions". (*Id.* at 6.)

The Third Circuit has held in unpublished decisions that "threats alone do not constitute

retaliation[.]"[9] *See Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) (citing *Maclean v.*

*Secor*, 876 F. Supp. 695, 699 (E.D. Pa. 1995) (collecting cases)); *see also Fischl v. Armitage*,

128 F.3d 50, 55 (2nd Cir.1997) ("Mere allegations of verbal abuse, threats, or defamations by a

correctional officer to a prisoner are not cognizable in a Section 1983 action."). Similarly, a

number of district courts in the Third Circuit have held that <u>threats alone</u> do not amount to a

constitutional violation. *Compare Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189

---

[9]  The Third Circuit has also held in unpublished opinions that Defendants are entitled to qualified immunity on retaliation claims premised on threats alone. *See Wilson v. Zielke*, 382 F. App'x 151, 153 (3d Cir. 2010) (analyzing threat to put a plaintiff in jail and holding that a defendant was entitled to qualified immunity on Plaintiff's First Amendment retaliation claim premised on threats alone, as "neither the United States Supreme Court nor the Third Circuit has defined with specificity the contours of when a threat constitutes an adverse action in the official-detainee setting"). The Court assumes without deciding that Defendants, who appear to be employees of a <u>private prison contractor</u>, would not be entitled to seek qualified immunity under Supreme Court precedent. In *Richardson v. McKnight*, 521 U.S. 399 (1997), the Supreme Court denied qualified immunity to prison guards who were privately employed, despite their quintessentially public function. Subsequently, in *Filarsky v. Delia*, 566 U.S. 377 (2012), the Supreme Court considered whether a private attorney temporarily retained by a municipal government as an investigator could claim qualified immunity in an action brought under 42 U.S.C. § 1983. Finding no distinction in the common law "between public servants and private individuals engaged in public service," the Court held that the investigator could assert "qualified immunity" in the lawsuit. *Filarsky*, 566 U.S. at 398. The *Filarsky* Court, however, reaffirmed the holding of *Richardson* in rejecting immunity for the private prison employees, emphasizing that the incentives of the private market suffice to protect employees when "a private firm, systematically organized to assume a major lengthy administrative task ... for profit and potentially in competition with other firms," assumes responsibility for managing an institution. *Id.* at 393 (quoting *Richardson*, 521 U.S. at 413); *see also McCullum v. Tepe*, 693 F.3d 696 (6th Cir. 2012) (holding that, even after *Filarsky*, private psychiatrist providing services to inmates as employee of Community Behavioral Health, a private entity, was not entitled to a qualified immunity defense); *Currie v. Chhabra*, 728 F.3d 626, 631–32 (7th Cir. 2013)(declining to decide issue but noting that *Richardson* is still good law); *Hasher v. Hayman*, No. 08-4105 (CCC), 2013 WL 1288205, at *9 (D.N.J. Mar. 27, 2013) (finding that Defendants, who were employed by private prison medical services contractor, failed to establish entitlement to qualified immunity).

(D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); *McKnight v. Bucks County Dep't of Corrs.*, 2008 WL 4771845, at *3 (E.D. Pa. 2009) ("Plaintiff may obtain relief under § 1983 if the verbal threats are accompanied by a reinforcing act."); *Gay v. City of Philadelphia*, 2005 WL 1844407, at *5 (E.D. Pa. 2005) (allegation that defendant threatened plaintiff, without any accompanying allegation that defendant carried through on threat, was not adverse action) *with Douglas v. Marino*, 684 F. Supp. 395, 398 (D.N.J. 1988) (stating claim where prison employee threatened inmate with knife).

Here, Plaintiff alleges that Defendants Mastrella, Sheffield, Klein, and Davis "threatened" Plaintiff in response to her complaints about the conditions at Columbus House. Plaintiff's allegations are extremely general and provide no context from which the Court could determine whether any of the threats at issue would deter a reasonable person from exercising her constitutional rights. For instance, Plaintiff does not provide facts about when and where the threats occurred, their frequency, or whether the threats were actually carried out and/or accompanied by any reinforcing act. With respect to Defendants Sheffield, Klein, and Davis, it also appears that the threats were made in response to Plaintiff's verbal complaints and not in response to her filing of protected grievances. Because threats alone are generally insufficient to constitute "adverse action" and Plaintiff has not provided facts to suggest that the threats were sufficient to deter a reasonable person from exercising her constitutional rights, the Court will dismiss the remaining First Amendment retaliation claims.

### e. Eighth Amendment Claims for Inadequate Medical Care and Exposure to Environmental Tobacco Smoke

Plaintiff also appears to allege that Defendants Klein and Davis denied her adequate medical care in violation of the Eighth Amendment. "In order to establish an Eighth

Amendment violation with respect to conditions of confinement, a prisoner must show that he has been deprived of 'the minimal civilized measure of life's necessities,' such as food, clothing, shelter, sanitation, medical care, or personal safety." *Panton v. Nash*, 317 F. App'x 257, 258 (3d Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 834 (1994)).

The Eighth Amendment, through its prohibition on cruel and unusual punishment, mandates that prison officials not act with deliberate indifference to a prisoner's serious medical needs by denying or delaying medical care. *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In order to sustain a constitutional claim, a prisoner must make: 1) an "objective" showing that the prisoner's medical needs were sufficiently serious; and 2) a "subjective" showing that the prison official acted with a sufficiently culpable state of mind. *Id.* (citing *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002)). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Id.* (citing *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)).

Here, Plaintiff alleges generally that Columbus House accepted her with certain medical conditions and implies that Defendants Klein, who is in charge of "medical issues", and Defendant Davis, who assisted Klein, failed to provide her with adequate medical care. (ECF No. 9, Am. Compl. at 5-6.) Plaintiff allegedly suffers from asthma, back problems, high blood pressure, and various allergies to mold, dust, spray chemicals, and smoke. Even assuming that some or all of Plaintiff's conditions are sufficiently serious, she has not provided facts showing that Defendants Davis and Klein were deliberately indifferent to her serious medical needs. To make such a showing, Plaintiff would need to provide facts suggesting that one or both of these

Defendants recklessly disregarded a substantial risk of serious harm by denying or delaying her medical care.

Plaintiff's more specific allegations with respect to Defendant Davis likewise fail to state a claim for inadequate medical care under the Eighth Amendment. Plaintiff alleges that when she attempted to tell Defendant Davis that she had a swollen eye, he cursed at her and told her to get out of his office. (*Id.* at 6.) On another occasion, she reported to Davis that she had previously had an asthma attack, which had been noted in a log book, but he refused to have her seen by a doctor. (*Id.*) Although some of Defendant Davis' conduct appears unprofessional, it does not rise to the level of deliberate indifference, *i.e.*, a reckless disregard of a serious risk of harm to Plaintiff. Even assuming that Davis denied Plaintiff treatment for her swollen eye, Plaintiff does not allege sufficient facts to suggest that her swollen eye was a serious medical condition for which she needed immediate treatment or that Davis disregarded a substantial risk of serious harm to Plaintiff when he told her to leave his office despite her swollen eye. Plaintiff also alleges that Defendant Davis refused to send her to a doctor after she reported to him that she had previously had an asthma attack. Although asthma can be a serious medical condition, and an asthma attack can be a medical emergency while it is ongoing, Plaintiff does not allege sufficient facts suggesting that Davis recklessly disregarded a substantial risk of serious harm to Plaintiff by deciding not to send her to a doctor <u>after</u> she reported a prior asthma attack. For the reasons explained above, Plaintiff has not alleged sufficient facts showing that Defendants Klein and/or Davis were deliberately indifferent to her serious medical condition(s), and the Court will dismiss the Eighth Amendment claims for inadequate medical care against these Defendants.

Plaintiff also appears to raise a § 1983 claim against Defendant Klein related to her exposure to environmental tobacco smoke ("ETS") at Columbus House. Plaintiff alleges that

Columbus House is designated as a smoke-free facility, but that staff and inmates there smoked "all the time." (ECF No. 9, Am. Compl. at 5-6.) While at Columbus House, Plaintiff allegedly had an asthma attack on more than one occasion due to the illegal smoking and allegedly still suffers respiratory complications from the exposure to second-hand smoke. "There are two varieties of ETS claims – present injury claims and future injury claims – and they are measured by different standards." *Brown v. DiGuglielmo*, 418 F. App'x 99, 102 (3d Cir. 2011) (citing *Atkinson v. Taylor*, 316 F.3d 257, 273 (3d Cir. 2003) (Ambro, J., dissenting in part)). The Court considers whether Plaintiff states a claim under § 1983 as to either type of ETS claim.

Here, with respect to her present injury claim, Plaintiff fails to provide sufficient allegations suggesting that Defendant Klein or any other prison officials were deliberately indifferent to her serious medical needs, *i.e.*, the alleged exacerbation of her asthma from tobacco smoke. *See Atkinson*, 316 F.3d at 273 (A present injury claim is a standard condition-of-confinement claim governed by the principles the Supreme Court established in *Estelle v. Gamble*, 429 U.S. 97 (1976) and *Farmer v. Brennan*, 511 U.S. 825 (1994), requiring a prisoner to "allege a sufficiently serious medical need (the objective component) and deliberate indifference by prison officials in response (the subjective component)."). For instance, Plaintiff does not allege that she complained to Defendant Klein or any other prison official that she had an ETS-related illness amounting to a sufficiently serious medical need or that she specifically sought medical treatment on account of excessive ETS exposure and was denied treatment; as such, she fails to establish deliberate indifference on the part of Defendant Klein or other prison

officials as to any such medical need.[10]  *See Brown*, 418 F. App'x at 103–04 (citing *Atkinson*, 316 F.3d at 266).

"Liability for a future injury case based on exposure to ETS requires proof of: (1) exposure to unreasonably high levels of ETS contrary to contemporary standards of decency; and (2) deliberate indifference by the authorities to the exposure to ETS."  *Brown*, 418 F. App'x at 104 (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  Even assuming without deciding that Plaintiff has provided sufficient facts to suggest that she was exposed to "unreasonably high levels of ETS contrary to contemporary standards of decency", she fails to provide facts suggesting that Defendant Klein was deliberately indifferent to the exposure, *i.e.*, that he was on notice of the problem and failed to address it.  As such, her future injury ETS claim against Defendant Klein is likewise dismissed for failure to state a claim for relief.

### f. Fourteenth Amendment Claims related to Medical Privacy

Finally, the Court also construes Plaintiff to allege that Defendants Klein and Davis violated her Fourteenth Amendment right to privacy in her medical information.[11] An individual has a constitutional right to privacy which protects "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977).  The Third Circuit held that the

---

[10] Because *respondeat superior* liability is unavailable under § 1983, Defendant Klein may not be held liable for the misconduct of other staff members at Columbus House/Bo Robinson.

[11] Plaintiff often describes this alleged misconduct as violations of her "hippa" [sic] privacy rights, apparently referring to the Health Insurance Portability and Accountability Act ("HIPAA").  Although the Court construes Plaintiff to raise claims arising solely under § 1983 and does not construe Plaintiff to allege a federal cause of action under HIPPA, it notes for Plaintiff's benefit that "[t]here is no federal private right of action under HIPPA." *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011) (citing *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Webb v. Smart Document Solutions*, LLC, 499 F.3d 1078, 1082 (9th Cir. 2007); *Acara v. Banks*, 470 F.3d 569 (5th Cir. 2006); Compliance and Enforcement, 65 Fed. Reg. 82,600, 82,601 (Dec. 28, 2000) ("Under HIPAA, individuals do not have a right to court action."). As such, to the extent she had raised a claim under HIPPA, it would subject to dismissal under § 1915(e)(2)(B).

prisoners have a constitutional right to privacy in medical information, but that the right is "subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." [12] *Doe v. Delie*, 257 F.3d 309, 317, 323 (3d Cir. 2001). The court explained that a prisoner's right to medical privacy is not as extensive as the right of a free citizen: "We do not suggest that Doe has a right to conceal [his] diagnosed medical condition from everyone in the corrections system. Doe's constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Doe*, 257 F.3d at 317; *see also Caldwell v. Beard*, 324 F. App'x 186, 188 (3d Cir. 2009) (finding that "[d]isclosure of [Plaintiff's] medical records . . . to the grievance officer responsible for responding to [Plaintiff's] claim was reasonably related to the legitimate penological interest of adjudicating the grievance and assessing the severity of [Plaintiff's] alleged injury); *Stephens v. Chairman of Pennsylvania Bd. of Prob. & Parole*, 173 F. App'x 963, 965 (3d Cir. 2006) (noting that district court had failed to address *Doe* in dismissing claim regarding review of Plaintiff's medical

---

[12] To determine whether a prison policy or regulation is "reasonably related to legitimate penological interests," a court must consider the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). They are: (1) whether there is a "'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it,' and this connection must not be 'so remote as to render the policy arbitrary or irrational;'" (2) "whether inmates retain alternative means of exercising the circumscribed right;" (3) "the costs that accommodating the right would impose on other inmates, guards, and prison resources generally;" and (4) "whether there are alternatives to the regulation that 'fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.'" *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (quoting *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999)). The court in *Delie* did not address whether there were legitimate penological interests present in that case because there was an undeveloped record on that issue and the defendants were entitled to qualified immunity. *See Jefferson v. Husain*, No. CV 14-2485, 2016 WL 1255731, at *7 (E.D. Pa. Mar. 31, 2016) (explaining that the *Delie* does not provide insight as to what would qualify as a legitimate penological interest).

records by doctor during disciplinary hearing, but affirming dismissal after finding that Plaintiff had put his medical condition at issue in challenging the disciplinary charge).

Courts construing prisoner's medical privacy claims have framed the right narrowly and have applied it to situations involving "unusual medical condition[s], which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through "humor or gossip[ .]" *Smith v. Hayman*, No. CIV.A. 09-2602 PGS, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012) (citing *Powell v. Shriver*, 175 F.3d 107, 112 (2d Cir. 1999) (tying the availability of a § 1983 claim for invasion of medical privacy to conditions such as HIV and Gender Identity Disorder), *aff'd*, 489 F. App'x 544 (3d Cir. 2012)).  In *Delie*, for example, an HIV-positive inmate claimed that his constitutional right to medical privacy was violated by the following procedures: prison nurses announced his medications loud enough that other prisoners could hear and infer his condition; prison staff informed escorting officers of his medical condition; and during physician visits, the clinic room door was kept open, allowing officers, inmates, and guards to see and hear *Doe* and the treating physician.  257 F.3d at 311-12.  More recently, in *Smith v. Hayman*, 489 F. App'x 544 (3d Cir. 2012), a prisoner asserted a claim for deprivation of his constitutional right to medical privacy related to his attempt to be diagnosed and treated for Gender Identity Disorder.  The plaintiff claimed his right to privacy was violated because the prison psychiatrist and social worker held confidential counseling sessions within view and potential earshot of other inmates. [13]  *Id.* at 548.

---

[13] In *Delie*, which was decided in 2001, the Third Circuit held that the defendants were entitled to qualified immunity on Plaintiff's medical privacy claim because "the contours of defendants' legal obligations under the Constitution were not sufficiently clear in 1995 that a reasonable prison official would understand that the non-consensual disclosure of a prisoner's HIV status violates the Constitution."  257 F.3d at 322.  More than ten years later in *Smith*, 489 F. App'x at

Here, Plaintiff's medical conditions include asthma, back problems, high blood pressure, and allergies to mold, dust, spray chemicals, and smoke, and she does not identify which of these conditions or medications, if any, were improperly disclosed by Klein and Davis. (*See* ECF No. 9. Am. Compl. at 6.) Plaintiff alleges generally that Defendants Klein and Davis permitted nonmedical staff to dispense Plaintiff's medications in front of other inmates and gave nonmedical staff access to Plaintiff's medical information on Plaintiff's medical request forms. (*Id.* at 5-6.) As a result of this practice, other inmates knew what types of medications Plaintiff was taking. (*Id.*) Defendant Davis allegedly discussed Plaintiff's medical information with her in the presence of inmates and nonmedical staff and dispensed Plaintiff's medication in a counselor's office in the presence of nonmedical staff and inmates. (*Id.* at 6.) Defendant Davis also allegedly told another inmate that Plaintiff had failed a drug test. (*Id.*)

Assuming that Defendant Davis disclosed that Plaintiff failed a single drug test and that Defendants Davis and Klein disclosed that Plaintiff has certain medical conditions by talking about her conditions openly and dispensing medication in front of non-medical staff and inmates,

---

549, the Third Circuit found that it "was aware of no case law...that would suggest that the conduct of the defendants, in light of their attempts to avoid disclosure, violated a clearly established constitutional right, and [*Delie*] did not establish any such rule with obvious clarity." Thus, as noted by another district court in this Circuit, "[s]ubsequent cases have done little to fill in the gaps left by *Delie* and define the parameters of a prisoner's right to privacy in his medical information." *Jefferson v. Husain*, No. CV 14-2485, 2016 WL 1255731, at *15 (E.D. Pa. Mar. 31, 2016) (denying qualified immunity where it was unclear whether doctor was entitled to qualified immunity as a private actor acting under color of state law)(citing *Smith* 489 F. App'x at 549); *see also Illes v. Kcomt*, Civil No. 1:12-CV-0395, 2014 WL 297352, at *2-3 (M.D. Pa. Jan, 27, 2014)(granting qualified immunity where Plaintiff alleged that counseling sessions were conducted at Plaintiff's cell door, rather than in a private room, and finding that the parameters of the right had not been so clearly established that the defendant would have known that his actions constituted a constitutional violation). As noted in footnote nine, the Court does not address qualified immunity because it assumes without deciding that Defendants would not be entitled to the defense under *Richardson* because they are employees of a private prison contractor.

these allegations, standing alone, do not rise to the level of a constitutional violation. Even if the Court were to read the Amended Complaint to allege that Defendants Davis and Klein disclosed that Plaintiff had asthma, back problems, high blood pressure, and/or allergies, these conditions are commonplace and do not constitute "unusual medical condition[s], which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence." *Smith*, 2012 WL 1079634, at *18. Although the allegations in the Amended Complaint suggest that Defendants Davis and Klein may have acted unprofessionally, their conduct does not rise to the level of a constitutional violation actionable under § 1983. As such, the Court will dismiss Plaintiff's claims premised on the violation of medical privacy.

## V.     CONCLUSION

For the reasons stated in this Opinion, the Amended Complaint is dismissed it its entirety pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). An appropriate Order follows.

/s/      Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: June 12, 2017